**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

Submitted: October 4, 2017
Decided: October 17, 2017

Kenneth M. Roseman, Esq.
Kenneth Roseman, P.A.
1300 King Street
Wilmington, DE 19801

Richard Galperin, Esquire
Joshua Meyeroff, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306

RE:  **Kathleen L. Phelps, et al. v. Dr. Joseph T. West, et al.**
     **C.A. No.: N15C-12-136 AML**

Dear Counsel:

This medical negligence suit has mutated into a dispute between the parties regarding alleged spoliation of evidence. After plaintiffs uncovered what they believed was perjury and manipulation of the discovery record, they were granted extensive discovery at defendants' expense and were permitted to amend their complaint to add a claim of fraud and misrepresentation. The plaintiffs contend an employee of the defendant hospital created a chart note reflecting discussions with a patient and, after the patient's death, destroyed or hid that chart note and created a new, sanitized chart note that was produced in discovery. The chart note, or lack

thereof, forms the basis of the fraud and misrepresentation claim. It is undisputed that the employee created a chart note after the patient's death; the only dispute is whether an earlier chart note existed.

The plaintiffs also argue they are entitled to an adverse inference instruction relating to the chart note and two other documents: (1) a portion of a fax sent to the defendant physician, and (2) a scheduling letter created by staff who scheduled the patient for surgery. The question now before the Court is whether the defendants are entitled to summary judgment on the plaintiffs' fraud and misrepresentation claim when the record contains no evidence that a chart note was created at the time the patient interacted with the employee or that the plaintiffs relied on or were damaged by the later-created chart note. The Court also must decide whether the plaintiffs are entitled to an adverse inference instruction where there is no evidence supporting a factual finding that the documents at issue were destroyed intentionally and in bad faith. I conclude the defendants are entitled to summary judgment on the fraud and misrepresentation claim, and the plaintiffs are not entitled to an adverse inference instruction. My reasoning follows.

## Background

The following facts are not disputed or, where disputed, are resolved in favor of the plaintiffs. On August 15, 2014, Dr. David Grubbs referred his patient, Anthony Phelps, for a cardiac catheterization based on Grubbs's diagnosis of

angina. On his billing sheet associated with the appointment, Grubbs indicated a diagnosis of "angina, unstable." Dr. Joseph West, a defendant in this action, performed the catheterization on August 22, 2014. West's report noted Phelps was a "67 year old man with [unstable angina] and markedly positive stress test."[1] West discharged Phelps from the hospital that day, but recommended he undergo bypass surgery. West referred Phelps to Dr. Paul Davis, a cardiac surgeon, to discuss that surgery. West did not have any involvement with Phelps' care after August 22, 2014.

West and Davis are not in practice together, but both are employed by defendant Christiana Care Health System, Inc. ("CCHS" and collectively with West, the "Defendants"). Davis met with Phelps on August 29, 2014 and scheduled him for bypass surgery on September 11, 2014.[2] On September 8th, however, Phelps reported to Davis's office that he was being treated for bronchitis by his primary care physician.[3] Phelps's surgery therefore was rescheduled to September 25, 2014. The surgery later was rescheduled a second time, to October 1, 2014, due to operating room and physician availability and prioritization of other, seemingly more urgent, surgeries.[4]

---

[1] App'x to Opening Br. in Supp. of Defs.' Mot. for Summ. J. (hereinafter "A") 11.
[2] A14-15.
[3] A15; Brady Tr. at 29-32.
[4] A15.

These changes to the schedule, and notes regarding the reasons for the changes, were reflected in handwritten notes on a form referred to internally in Davis's office as a "face sheet." That face sheet was preserved and produced in discovery. There is no dispute in this case that the handwriting on the face sheet belonged to Christine Brady, a member of Davis's staff, or that the notations were made contemporaneously with Brady's conversations with Phelps.

It was Dr. Davis's staff's practice to issue a scheduling letter to a patient when surgery was scheduled and to retain a copy of the letter in the patient's file. A scheduling letter was issued to Phelps, but when Phelps's surgery was rescheduled, Brady removed the initial scheduling letter from Phelps's file, placed it in a bin designated for shredding, and placed the new scheduling letter in the file.[5] Brady testified scheduling letters often, but not always, are discarded when a procedure is rescheduled.[6]

On September 19, 2014, Phelps developed an acute myocardial infarction and went into cardiac arrest. Phelps died on September 20, 2014. In May 2015, Plaintiffs' counsel requested Phelps's records from CCHS. In response, Brady contacted CCHS's legal risk management department. She also prepared a document labeled "chart note" that reflected, or purported to reflect, Brady's

---

[5] A61-62 (Brady 6/16/16 Dep. Tr. at 43-46).
[6] *Id.* (Brady 6/16/16 Dep. Tr. at 43-47).

interactions with Phelps (the "2015 Chart Note").[7] The substance of the events on the 2015 Chart Note is identical to the events Brady noted on the face sheet.[8] Brady, however, mistakenly wrote the year 2015, rather than 2014, for each of the events.[9]

The plaintiffs, who are Phelps's estate and his spouse and children (collectively, the "Plaintiffs"), filed this negligence action against West and CCHS on December 15, 2015. Plaintiffs' theory, fairly summarized, is that West negligently discharged Phelps from the hospital on August 22, 2014, without adequately informing him of the risks or recommending necessary follow-up care and restrictions. Plaintiffs believe West should have recommended immediate bypass surgery and should not have discharged Phelps, given Grubbs's unstable angina diagnosis and the symptoms, including chest pains, that Plaintiffs contend Phelps was experiencing at the time West evaluated him.

Plaintiffs deposed Brady regarding, among other things, the 2015 Chart Note. During her first deposition, Plaintiffs' counsel showed Brady the 2015 Chart Note and asked her, several times, in what year she wrote the entries on that document. Brady repeatedly testified that she wrote the 2015 Chart Note in

---

[7] A49.

[8] *Compare* A15 *with* A49.

[9] A49. The 2015 Chart Note was produced to Plaintiffs' attorney in response to the records request. After litigation was filed, Brady noticed that the wrong year was written on the Chart Note and she therefore wrote the year 2014 over each of the dates on the note. *See* A215-17.

2014.[10] After the deposition, however, Brady changed her testimony and for the first time acknowledged that she created the 2015 Chart Note in 2015, well after Phelps's death.[11] In the wake of Brady's deposition and her acknowledgment that she manipulated the record, the Court permitted Plaintiffs to engage in wide-ranging discovery, at Defendants' expense, including (1) depositions of Brady, West, Davis, and CCHS's risk manager, Carol Sirkowski, (2) access to Defendants' counsel's files and CCHS's risk management files,[12] and (3) access to other patients' files to evaluate Brady's practice of creating chart notes.[13] Plaintiffs also were permitted to amend their complaint to add a claim for fraud and misrepresentation and were awarded attorneys' fees for the motion to compel, the motion for sanctions, and Plaintiffs' counsel's time relating to the additional discovery.

In addition to their fraud claims regarding the 2015 Chart Note, Plaintiffs also seek an adverse inference jury instruction relating to the chart note, scheduling letter, and two pages purportedly missing from West's document production. In support of their argument that West was aware, or should have been aware, of Phelps's symptoms and the need for immediate bypass surgery, Plaintiffs point to

---

[10] A59-60, A62.

[11] A215-17.

[12] Defendants offered this access in response to Plaintiffs' motions and were permitted to remove evaluative language regarding the case.

[13] Transcript (D.I. 71) at 46; D.I. 49.

Grubbs's records and his diagnosis of unstable angina. Although the facts are disputed, for purposes of this motion it is assumed that Grubbs's office faxed West all Grubbs's records for Phelps, consisting of 10 pages and a fax cover sheet indicating the number of pages transmitted. In discovery in this case, however, West's office only produced nine pages of documents that West received from Grubbs' office; missing were the fax cover sheet and the billing sheet indicating "Angina, Unstable."

## Analysis

A motion for summary judgment will be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[14] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the non-moving party.[15] The Court will accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts. From those accepted facts[,] the [C]ourt will draw all rational inferences which favor the non-moving party."[16] The non-moving party, however, must do more than suggest some "metaphysical doubt as to material facts." *Brzoska v. Olson*, 668

---

[14] Super. Ct. Civ. R. 56(c).
[15] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).
[16] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).

A.2d 1355, 1364 (Del. 1995). Summary judgment should be granted if the trier of fact only may draw one reasonable inference from the facts.[17]

**A.     The plaintiffs have not pointed to any evidence that a chart note was created in 2014, that they justifiably relied on the 2015 Chart Note, or that they suffered any damages as a result of the 2015 Chart Note.**

In order to establish a claim of fraud, Plaintiffs must prove:

> 1) a false representation, usually one of fact, made by the defendant, 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth, 3) an intent to induce the plaintiff to act or to refrain from acting, 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation, and 5) damage to the plaintiff as a result of such reliance.[18]

Here, Plaintiffs' claim fails because the record does not support the elements of misrepresentation, reliance, or damages.

As to the existence of a misrepresentation, Plaintiffs' amended complaint alleges Brady created a false medical record to mislead Plaintiffs as they evaluated or pursued their negligence claim.[19] Plaintiffs' theory suggests that because 2015 Chart Note was created after Phelps' death, it must be the counterfeit of the one

---

[17] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[18] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).
[19] Am. Compl. ¶ 15-18.

Brady destroyed. Plaintiffs believe the destroyed chart note likely contained evidence that Phelps complained to Brady of chest pain.[20]

The record does not support a reasonable inference consistent with Plaintiffs' theory. In fact, for at least three reasons, the record supports only an inference that the 2015 Chart Note was the only chart note created. First, although Brady initially testified she created the 2015 Chart Note in 2014, neither Brady nor any other person testified that she created two chart notes. Second, the documents in the record show the 2015 Chart Note was a transcription of the hand-written face sheet that Brady previously prepared.[21] That is, the face sheet, which was produced before and during the litigation, contains the same information as the 2015 Chart Note. Therefore, to accept Plaintiffs' theory, the Court would have to infer Brady created both a face sheet and a chart note during her discussions with Phelps, but only recorded certain information on the chart note, which she later destroyed. That inference, however, is not supported by the record, which is the third reason Plaintiffs' theory lacks support. Plaintiffs have uncovered no evidence, direct or circumstantial, that support the counterfeit theory despite additional discovery at Defendants' expense. Although Plaintiffs examined dozens of patient

---

[20] Plaintiffs have not sued Davis, Brady's employer, alleging Davis was negligent in postponing Phelps' surgery. Rather, Plaintiffs theorize that if Phelps complained of these symptoms to Brady, he likely also mentioned them to West on August 22nd.

[21] The information on the face sheet, although dated, was haphazardly jotted on different portions of the document.

files on which Brady worked during the same time period, Plaintiffs did not identify a single time Brady created both a face sheet and a chart note for the same patient interaction. Moreoever, none of Phelps's family members testified that he complained of chest pain at any time he was under Davis's care. In other words, apart from their bare theory of two chart notes, there is no evidence of a misrepresentation.

Even as to the 2015 Chart Note, which CCHS did represent, for a time, as a contemporaneously-created document, Plaintiffs have not established justifiable reliance. Plaintiffs argue their counsel relied on the 2015 Chart Note when forming their litigation strategy and their expert relied on the chart note when evaluating the merits of the action. In order to maintain a fraud action, a plaintiff must show that *"the plaintiff's* action or inaction [was] taken in justifiable reliance upon the representation . . ."[22] Here, Plaintiffs cited no case in which a court concluded an expert's or advisor's reliance satisfies the reliance element of a fraud claim.

Assuming for argument's sake that justifiable reliance could extend to counsel and experts, Plaintiffs, in order to prove reliance and damages, would need to offer more than speculation as to what counsel or the expert would have done

---

[22] *Johnson v. Preferred Professional Insurance Company*, 91 A.3d 994, 1017 (Del. Super. 2014) (emphasis added).

differently. Here, Plaintiffs' speculation of what *could* have been different depends on their unsupported theory about a second chart note, not on the existence or contents of the 2015 Chart Note. Put differently, Plaintiffs cannot show how their counsel or expert relied to their detriment on the 2015 Chart Note; their reliance and damages arguments depend on the purportedly destroyed, "original" note, of which there is no evidence. Moreover, after learning the circumstances surrounding the 2015 Chart Note's creation, the Court allowed Plaintiffs to amend their complaint and take additional discovery. Plaintiffs did not add any negligence claims or seek to supplement their expert disclosures, further weakening any contention that their claims or theories relied on the 2015 Chart Note.

**B.      There is no evidence that any missing records were destroyed or withheld intentionally or in bad faith.**

Plaintiffs also seek an adverse inference jury instruction regarding the 2015 Chart Note, the scheduling notice, and the medical records from Grubbs that were missing from West's records. An adverse inference instruction requires factual allegations that a defendant's intentional spoliation inhibited a plaintiff's ability to prove a claim.[23] Before issuing an negative inference instruction, "a trial court must first determine that a party acted willfully or recklessly in failing to preserve

---

[23] *Pikey v. Bryant*, 203 S.W.3d 817, 825 (Mo. Ct. App. 2006).

evidence."[24]  When a party willfully destroys evidence, it is the duty of the trial court to "adopt a view of the facts as unfavorable to the wrongdoer as the known circumstances will reasonably admit."[25]  Such a view of the facts, however, does not apply "where the evidence is destroyed accidentally or where records are purged under a routine document destruction policy."[26]

The party seeking an adverse inference instruction bears the burden of providing a factual basis for the instruction.[27]  Here, as previously discussed, there is no factual basis, or reasonable inference, from which the Court may conclude that another chart note ever existed.  There also is no evidence the alleged document was destroyed, intentionally or otherwise, and thus no basis for an adverse inference instruction.

The Court also cannot infer that the scheduling notice was destroyed in bad faith.  The Supreme Court has held a trial court may not draw an adverse inference when destruction of documents occurred in the ordinary course of business.[28]  Brady testified it was her practice to shred obsolete scheduling letters that did not have notes on them.[29]  Plaintiffs have offered no evidence of willful or reckless destruction, or any record supporting an inference that Defendants were motivated

---

[24] *Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 548 (Del. 2006).
[25] *Id.*
[26] *Id.*
[27] *Id.* at 549.
[28] *Id.* at 548.
[29] Tr. at 43-47.

to destroy an adverse document, such as evidence that Phelps was experiencing symptoms he might have reported to Davis's staff that would bolster Plaintiffs' negligence claim.

Lastly, Plaintiffs failed to show bad faith conduct by West (or CCHS) regarding the records faxed by Dr. Grubbs. Although the record supports an inference that the "missing" pages were faxed to Phelps, Plaintiffs offered no evidence of bad faith, willful or reckless destruction, or intentionally withholding evidence. Of the eleven pages in Grubbs's report, notes regarding Phelps's angina were contained in the nine pages sent to West's office. West himself had notes regarding Phelps's unstable angina, so destruction or omission of the other two pages would do nothing to ameliorate Defendants' position if spoliation was their intent. In sum, Plaintiffs have fallen well short of establishing the factual basis necessary for the adverse inference they seek.

## Conclusion

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is **GRANTED** and Plaintiffs' request for an adverse inference instruction is **DENIED. IT IS SO ORDERED.**

Very truly yours,

Abigail M. LeGrow, Judge

Original to Prothonotary